IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NUTRAMARKS, INC., a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>LIFE BASICS, LLC, an Illinois limited liability company,<br>　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING LIFE BASICS, LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No.: 2:15-cv-00571-DN<br><br>District Judge David Nuffer |

　　　　Defendant Life Basics, LLC ("Life Basics"), filed a Motion to Dismiss for Lack of Personal Jurisdiction[1] (the "Motion to Dismiss") in response to Plaintiff NutraMarks, Inc.'s ("NutraMarks") Complaint.[2] NutraMarks opposed[3] the Motion to Dismiss, arguing that Life Basics had minimum contacts with the State of Utah sufficient to exercise specific jurisdiction, including web activity; receiving a cease and desist letter from NutraMarks; and the alleged infringement of a trademark held by NutraMarks, a company with its principal place of business in Utah. Because the record shows that Life Basics is an Illinois company that has not sold its products in Utah or otherwise expressly aimed its website or other business activity at Utah, the Motion to Dismiss is GRANTED.

---

[1] [Docket no. 7](#), filed Dec. 14, 2015.

[2] Complaint and Demand for Jury Trial ("Complaint"), [docket no. 2](#), filed Aug. 10, 2015.

[3] Plaintiff's Opposition to Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum in Support ("Opposition"), [docket no. 16](#), filed Feb. 19, 2016.

FACTUAL BACKGROUND ........................................................................................................ 2
DISCUSSION .......................................................................................................................... 4
    Life Basics Is Not Subject to Specific Jurisdiction in Utah. ............................................. 5
        Life Basics' Business Activity Was Not Expressly Aimed at Utah. ...................... 6
        Life Basics' Internet Activity Was Not Expressly Aimed at Utah. ....................... 7
        NutraMarks' Cease and Desist Letter Is Not Sufficient to Impose Specific
            Jurisdiction. ............................................................................................... 13
        Life Basics' Alleged Trademark Infringement Is Not Sufficient to Create Specific
            Jurisdiction. ............................................................................................... 14
CONCLUSION AND ORDER ................................................................................................. 15

## FACTUAL BACKGROUND

NutraMarks, a wholly owned subsidiary of Nutraceutical Corp, is a Delaware corporation with its principal place of business in Park City, Utah.[4] NutraMarks "is in the business of developing, manufacturing, marketing and selling nutritional and dietary supplements and the ingredients to manufacture nutritional and dietary supplements."[5] As early as January 1999, NutraMarks began using the mark "Life's Basics" to market and sell its supplements.[6] NutraMarks officially registered the "Life's Basics" mark with the United States Patent and Trademark Office ("USPTO") on October 24, 2000.[7]

Defendant Life Basics is an Illinois limited liability company with its principal place of business in Deerfield, Illinois.[8] Life Basics manufactures and sells iced tea beverages and does

---

[4] Complaint at ¶ 1, docket no. 2.

[5] *Id.*

[6] *Id.* at ¶¶ 8–9.

[7] Exhibit A to Declaration of Kennedy Nate in Support of Plaintiff's Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction ("Nate Declaration"), docket no. 17-1, filed Feb. 19, 2016.

[8] Declaration of Indra Chatterjee in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Chatterjee Declaration") at ¶ 3, docket no. 8, filed Dec. 14, 2015.

not offer any services.[9] Life Basics' beverages can only be purchased in grocery stores located in the Midwest[10] and are not available for purchase online.[11] Life Basics began using the mark "Life Basics" around March 1, 2014 to market and sell its iced tea beverages.[12] Life Basics applied for a trademark with the USPTO for the mark "Life Basics" on May 15, 2014,[13] and the USPTO registered the trademark on August 11, 2015.[14]

On June 30, 2015, NutraMarks sent a cease and desist letter to Life Basics demanding that Life Basics abandon its use of the mark "Life Basics" because of the "likelihood of confusion . . . as to the source, affiliation, or sponsorship" between the "Life Basics" and "Life's Basics" marks.[15] In a response to NutraMarks' demand letter on July 8, 2015, Life Basics declined to stop using the mark, stating its belief that Life Basics was not infringing on "the valid trademark rights" of NutraMarks.[16] NutraMarks then filed suit in this action alleging three claims against Life Basics: (1) federal trademark infringement, (2) unfair competition and false designation of origin under federal law, and (3) unfair competition under Utah state law.[17] Life Basics then filed its Motion to Dismiss arguing that personal jurisdiction is lacking.

---

[9] *Id.* at ¶¶ 12–13.

[10] Exhibit J to Nate Declaration at 2, docket no. 17-10.

[11] Chatterjee Declaration at ¶ 14, docket no. 8.

[12] Complaint at ¶ 18, docket no. 2.

[13] *Id.* at ¶ 26.

[14] Exhibit C to Nate Declaration, docket no. 17-3, filed Feb. 19, 2016.

[15] Exhibit D to Nate Declaration at 2-3, docket no. 17-4, filed Feb. 19, 2016.

[16] Exhibit E to Nate Declaration at 2-4, docket no. 17-5, filed Feb. 19, 2016.

[17] *See* Complaint at pp. 7–10, docket no. 2.

**DISCUSSION**

"The Plaintiff bears the burden of establishing personal jurisdiction over the defendant."[18] "When a district court rules on a [Rule 12(b)(2)] motion to dismiss for lack of personal jurisdiction ... the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[19] "In the preliminary stages of litigation ... the plaintiff's burden is light."[20] All conflicting affidavits and factual disputes must be resolved in the plaintiff's favor.[21]

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue or personal jurisdiction."[22] "By considering documents outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(2), the Court does not convert the motion into one for summary judgment."[23]

When considering personal jurisdiction in a federal question case, a court must first determine whether the "applicable statute authorizes the service of process on defendants," and second decide whether the exercise of personal jurisdiction "comports with constitutional due process demands."[24] NutraMarks claims federal subject-matter jurisdiction under the Lanham Act's trademark law,[25] which does not provide for nationwide service of process.[26] Rule

---

[18] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations omitted).

[19] *Id.*

[20] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[21] *Id.*

[22] *1-800-Contacts, Inc. v. Memorial Eye, PA*, No. 2:08-CV-983-TS, 2009 WL 1586654, at *1 n. 1 (D. Utah June 4, 2009).

[23] *Id.*

[24] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[25] Complaint at ¶ 4, docket no. 2.

[26] 15 U.S.C. § 1051 *et seq.*

4(k)(1)(A) of the Federal Rules of Civil Procedure requires application of the law of the state in which the district court sits.[27] Thus, NutraMarks must show that jurisdiction is authorized under the Utah long-arm statute, and that the exercise of jurisdiction will not offend the due process clause of the Fourteenth Amendment.[28] The Utah Supreme Court has expressly stated that "any set of circumstances that satisfies due process will also satisfy the long-arm statute."[29] This collapses the Utah jurisdiction standard into the more general federal "due process" standard for jurisdiction.[30]

"[T]o exercise [personal] jurisdiction in harmony with due process, defendants must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice."[31] There are two recognized types of personal jurisdiction that may allow this case to proceed in this district—specific and general jurisdiction. Because NutraMarks did not argue for general jurisdiction in its Opposition to the Motion to Dismiss,[32] only specific jurisdiction will be considered. For the reasons set forth below, NutraMarks has failed to demonstrate that this court has specific jurisdiction over Life Basics.

**Life Basics Is Not Subject to Specific Jurisdiction in Utah.**

The "minimum contacts" standard requires, "first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the

---

[27] *Dudnikov*, 514 F.3d at 1070.

[28] *Zing Bros., LLC v. Bevstar, LLC*, No. 2:11-CV-337-DN, 2011 WL 4901321, at *1 (D. Utah Oct. 14, 2011).

[29] *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

[30] *Rusakiewicz*, 556 F.3d at 1100.

[31] *Dudnikov*, 514 F. 3d at 1070 (internal quotation marks omitted).

[32] *See* Opposition, docket no. 16.

plaintiff's injuries must 'arise out of' defendant's forum-related activities."[33] The "purposeful direction" doctrine is to ensure that an out-of-state defendant is not required to defend herself for "random, fortuitous, or attenuated contacts" with the forum state.[34] In *Calder v. Jones*, the Supreme Court reasoned that a defendant has "purposefully directed" actions at a forum state when the defendant's (1) intentional actions, (2) were expressly aimed at the forum state, with (3) the knowledge that the "brunt of the harm" would be felt in the forum state.[35] This analysis is commonly referred to as the "effects test."[36] The focus of this analysis is on "the relationship among the defendant, the forum, and the litigation," not the relationship between Life Basics and NutraMarks.[37]

**Life Basics' Business Activity Was Not Expressly Aimed at Utah.**

The record shows that Life Basics has not purposefully directed its business at Utah. Life Basics asserts that it has "no offices, no warehouses, no manufacturing plants, and no other facilities of any kind in Utah."[38] Life Basics has no agents, sale representatives, employees, or distributors in Utah, does not solicit business in Utah, and has never sold a product to a Utah customer "either directly or through the internet."[39] NutraMarks does not dispute these assertions. These facts show a lack of direct contact between Life Basics and the State of Utah on which to base a finding of specific jurisdiction.

---

[33] *Dudnikov*, 514 F.3d at 1071.

[34] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[35] *Calder v. Jones*, 465 U.S. 783, 789 (1984).

[36] *See Younique, LLC v. Youssef*, No. 2:15-CV-783-JNP, 2016 WL 6998659, at *7 (D. Utah Nov. 30, 2016).

[37] *Calder*, 465 U.S. at 788.

[38] Chatterjee Declaration at ¶ 4, docket no. 8.

[39] *Id.* at ¶¶ 6–11.

6

**Life Basics' Internet Activity Was Not Expressly Aimed at Utah.**

The next step of the analysis concerns Life Basics' internet presence, including its use of websites and social media, and whether Life Basics has "expressly aimed" its use of the alleged infringing trademark at Utah knowing that the "brunt of the harm" would be felt in Utah.

Additionally, NutraMarks argues that its cease and desist letter, sent June 30, 2015, is sufficient to create specific jurisdiction because it put Life Basics on notice that it was causing harm in Utah and that any infringement after that time created sufficient contacts.[40] NutraMarks argues that the trademark infringement on a mark held by a Utah company is sufficient to establish specific jurisdiction.[41] None of these proposed bases for personal jurisdiction over Life Basics has merit.

In its Complaint and Opposition, NutraMarks alleged that Life Basics operates an "interactive website,"[42] "various social media pages," and a "crowdfunding page"[43] to market and promote its products in Utah.

The parties agree that the sliding-scale framework established in *Zippo Mfg. Co. v. Zippo Dot Com., Inc.*[44] controls the analysis of a website to determine if minimum contacts exist. However, the Tenth Circuit has declined to adopt the *Zippo* test, but rather employs it "as a heuristic adjunct to, rather than a substitute for, traditional jurisdictional analysis."[45] The *Zippo* test categorizes a defendant's internet activity into three types of websites: (1) active websites "where a defendant clearly does business over the Internet," (2) interactive websites "where a

---

[40] Opposition at 15–16, docket no. 16.

[41] *Id.* at 17, docket no. 16.

[42] Complaint at ¶ 7, docket no. 2.

[43] Opposition at iii, docket no. 16.

[44] 952 F. Supp. 1119 (W.D. Pa. 1997).

[45] *Shrader v. Biddinger*, 633 F.3d 1235, 1242 n. 5 (10th Cir. 2011).

user can exchange information with the host computer," and (3) passive websites, which do "little more than make information available."[46] *Zippo* offers a helpful framework for analyzing Life Basics' online activities, including its website, social media pages, and crowdfunding page.

Life Basics asserts in its Motion to Dismiss that its website, located at www.lifebasicsorganics.com, is a passive website because it is "purely information and is not a transaction site," [47] and that despite links stating "order online now," the website has never allowed customers to place orders online.[48] NutraMarks does not dispute these assertions. Therefore, for purposes of this motion, the Life Basics website does not support online purchases or business transactions. NutraMarks alleges in its Opposition that Life Basics' website falls within the interactive website category because it allows users to "sign up for updates, . . .enter for a chance to win free tea, and communicate directly with [Life Basics]."[49] However, such interactions with the site do not arise to the level of "knowing and repeated transmission of computer files over the Internet" with residents of foreign jurisdictions.[50]

Rather, Life Basics' Internet activity falls in the "middle ground . . . occupied by interactive Web sites where a user can exchange information with the host computer." [51] To determine whether this exchange creates a basis for asserting personal jurisdiction over a defendant, courts examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."[52] NutraMarks does not develop its "interactive

---

[46] *Zippo*, 952 F. Supp at 1124. *See also Zing Bros.*, 2011 WL 4901321, at *2.
[47] Motion to Dismiss at 9, docket no. 7.
[48] Chatterjee Declaration at ¶ 14, docket no. 8.
[49] Opposition at 3, docket no. 16.
[50] *Zippo*, 952 F.Supp. at 1124.
[51] *Id*.
[52] *Id*.

website" argument with any facts that show a high level of interactivity and commercial nature of the information being exchanged on Life Basics' website. [53]

Conversely, Life Basics has shown that the information exchanged with users on the website is intended to educate the user on the history of Life Basics and the purported benefits of drinking its organic tea products.[54] The *Zippo* decision relies in part upon *Bensusan Restaurant Corp., v. King*, in which the Southern District of New York found no personal jurisdiction over a defendant in a trademark infringement case based upon a website that contained general information about the defendant's club, a calendar of events and ticket information.[55] That court reasoned that operation of the website did not rise to the level of purposeful availment of that jurisdiction's laws, reasoning that if a website user wanted to patronize the club, the user would need to initiate contact outside of the website by calling or visiting a ticket outlet and then pick up tickets at the club in person.[56] Like the website for the jazz club in *Bensusan*, the Life Basics website has no purchase function and offers no information on pricing or product availability, as would be expected from an interactive commercial website.[57] A Utah consumer wanting to do business with Life Basics would be required to initiate contact with Life Basics outside of the website. These facts, together with the lack of evidence showing that the Life Basics website is or has been expressly directed at Utah or Utah citizens, demonstrate that the Life Basics website is not grounds to establish personal jurisdiction.

---

[53] Opposition at 3, docket no. 16.

[54] Exhibits 1–13 to the Declaration of David P. Johnson in Support of the Motion to Dismiss for Lack of Personal Jurisdiction ("Johnson Declaration"), docket no. 9-1 – 9-13, filed on Dec. 14, 2015.

[55] 937 F.Supp. 295, 297 (S.D.N.Y.1996).

[56] *Id.* at 299.

[57] Exhibits 1–13 to the Declaration of David P. Johnson in Support of the Motion to Dismiss for Lack of Personal Jurisdiction ("Johnson Declaration"), docket no. 9-1 – 9-13, filed on Dec. 14, 2015.

NutraMarks next asserts that Life Basics operates social media including a Twitter account, a Facebook page, an Instagram page, and a YouTube account to "market and promote its products."[58] NutraMarks does not provide facts that back up these assertions; it merely alleges that Life Basics uses its social media to direct individuals to its crowdfunding page.[59] Thus, Life Basics' use of social media will be analyzed alongside its use of a crowdfunding page.

Crowdfunding has been explained as follows:

> Crowdfunding, is, as its name indicates, funding from the crowd—raising small amounts of money from a large number of investors. Unlike typical business financing, which comes primarily from wealthy individuals and institutional investors, crowdfunding raises money from the general public. In the past, the transaction costs associated with raising small amounts from a large number of investors would have made crowdfunding unworkable, but the Internet has significantly reduced those transaction costs.[60]

In this case, Life Basics used a third-party website, located at www.indiegogo.com, to host its crowdfunding "campaign."[61] Indiegogo allows individuals and companies to create campaigns on its website in order to raise money for projects, business ideas, product ideas, etc.[62] Each campaign must have a target fundraising goal, as well as a campaign launch and end date.[63] After a campaign has ended, unless the fundraising goal was met or exceeded, donors can no longer contribute to a campaign.[64] Businesses and individuals are able to offer various "perks," such as t-shirts and priority access to products, in exchange for contributions.[65]

---

[58] Opposition at iii, docket no. 16.

[59] *Id.* at xi, ¶ 34, docket no. 16.

[60] C. Steven Bradford, *Crowdfunding and the Federal Securities Laws*, 2012 Colum. Bus. L. Rev. 1, 5 (2012).

[61] Opposition at 4-5, docket no. 16.

[62] Indiegogo, *The Essential Guide to Crowdfunding*, http://learn.indiegogo.com/the-essential-guide-to-crowdfunding (last visited May 17, 2017).

[63] *Id.*

[64] Indiegogo, *InDemand*, https://learn.indiegogo.com/indemand/ (last visited May 17, 2017).

[65] *The Essential Guide to Crowdfunding*, *supra*.

Life Basics launched its crowdfunding campaign using the Indiegogo platform on October 12, 2015.[66] The campaign ran for 42 days and ended on November 22, 2015.[67] During that time, the campaign received a total of nine contributions totaling $340.[68] None of the nine donors were Utah residents.[69] NutraMarks argues that because the crowdfunding campaign "allow[ed] contributors anywhere in the United States to make donations," when viewed in conjunction with Life Basics' main website, the site "directs its conduct into Utah and therefore subjects [Life Basics] to personal jurisdiction in Utah."[70] Further, NutraMarks cites the crowdfunding site's ability to allow a user to enter credit card or banking information, make contributions, enter contact information, and a drop-down menu including Utah as an option, as further evidence of contacts between Life Basics and Utah.[71]

Although it is easy to imagine cases where a crowdfunding campaign could establish minimum contacts with Utah, this is not one of those cases. NutraMarks places too much emphasize on the interactivity of the website and not enough emphasis on whether the site was "expressly aimed" at Utah. None of the nine crowdfunding donors are from Utah and there are no other facts that show Life Basics targeted or solicited any donations or business in the State of Utah. The fact that the crowdfunding page contains a drop-down menu which includes Utah as an option is not enough, by itself, to show that Life Basics targeted Utah in its six-week crowdfunding campaign. Indeed, a generalized request that anyone, anywhere make a donation

---

[66] Exhibit J to Nate Declaration at 3, docket no. 17-10.

[67] *Id.*

[68] Second Declaration of Indra Chatterjee in Support of Life Basics Motion to Dismiss for Lack of Personal Jurisdiction at ¶ 2, docket no. 19, filed Mar. 7, 2016.

[69] *Id.* at ¶ 3.

[70] Opposition at 6–8, docket no. 16.

[71] Opposition at 10, docket no. 16.

to support Life Basics' generic goal to become a "national brand" is insufficient to show Utah was targeted.[72] Moreover, there is no indication on the campaign page that Life Basics has sold its product to Utah consumers.

NutraMarks also argues that Life Basics' social media efforts attempting to drive interest in the crowdfunding campaign is sufficient contact with Utah. This argument is unavailing. On similar facts, District Judge Clark Waddoups held that the combination of a website, a Twitter account, a Facebook page, and a YouTube account were insufficient to create jurisdiction without showing that activities or products were purposefully directed at Utah.[73] Similarly, Life Basics' multiple social media pages are insufficient to create minimum contacts with Utah because they do not target Utah or solicit business from Utah residents. NutraMarks has not alleged facts or presented evidence to show that any of Life Basics social media even mention Utah.

Even looking at Life Basics' internet activities as a whole (its website, crowdfunding campaign page, and social media referring individuals to the crowdfunding page), there are no facts that show purposeful direction toward the State of Utah. The record does not reflect any donations to the crowdfunding campaign from Utah or Utah residents. Therefore, NutraMarks has not alleged sufficient facts to establish minimum contacts based on Life Basics' internet activities.[74]

---

[72] *Cf. Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003).

[73] *Caspers Ice Cream, Inc. v. Fatboy Cookie Co.*, No. 1:12-CV-133-CW, 2013 WL 2367976 (D. Utah May 29, 2013).

[74] *Calder*, 645 U.S. at 789.

**NutraMarks' Cease and Desist Letter Is Not Sufficient to Impose Specific Jurisdiction.**

NutraMarks argues that because Life Basics received a letter alleging trademark infringement of a mark held by a Utah company, it could reasonably be required to defend itself in a Utah court.[75] NutraMarks relies on the *Calder* test and argues that Life Basics knew the brunt of the harm would be felt in Utah after receiving the letter.[76] This argument is flawed because it improperly focuses on the relationship between NutraMarks (a third-party) and Life Basics, and not on the relationship of Life Basics with Utah.[77] Additionally, subjecting Life Basics to jurisdiction in Utah based on a cease and desist letter alone would violate due process and "offend the traditional notions of fair play and substantial justice" because Life Basics has no control over incoming correspondence or the allegations asserted by third parties.[78]

In an analogous case, the Federal Circuit held that "a patentee is not subjected to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement," because "such contacts alone would not comport with principles of fairness."[79] In *Red Wing Shoe*, the plaintiff unsuccessfully alleged jurisdiction based on letters sent by the defendant.[80]

Here, the parties' contact was initiated by NutraMarks with a single cease and desist letter,[81] to which Life Basics responded. This is insufficient to subject Life Basics to personal jurisdiction in the District of Utah. To hold otherwise would enable any party to create

---

[75] Opposition at 16, docket no. 16.

[76] *Id*.

[77] *See Calder*, 465 U.S. at 788.

[78] *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 336 (1945).

[79] *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

[80] *Id.*

[81] *See* Exhibit D to Nate Declaration, docket no. 17-4.

jurisdiction over a defendant regardless of that defendant's contacts with the jurisdiction, simply by sending a letter and getting a response. Thus, a cease and desist letter cannot form the basis for specific jurisdiction in this case.[82]

**Life Basics' Alleged Trademark Infringement Is Not Sufficient to Create Specific Jurisdiction.**

NutraMarks contends that Life Basics' alleged infringement on the "Life's Basics" mark, which is registered to a Utah company, is sufficient to establish specific jurisdiction under the *Calder* "effects test."[83] NutraMarks relies on *System Designs, Inc. v. New Customware Co., Inc.*[84] and *Zing Bros.*[85] for the proposition that an allegation of trademark infringement is sufficient to confer jurisdiction because "trademarks are registered in a national database," and that once a mark is registered, the "owner of a mark puts the world on notice-literally-that [sic] they have the rights to that mark . . . thereby warning [infringers] that [they] might be subject to suit in Utah if [they] choose to use that mark."[86] However, these cases cannot be read this broadly. Both cases ultimately upheld personal jurisdiction based on the totality of factors considered under *Calder* and *Zippo*, not the per se rule NutraMarks suggests.[87]

The *System Designs* court declined to create a *per se* rule imposing personal jurisdiction in trademark infringement cases. Neither the Tenth Circuit nor any other jurisdiction has adopted such a rule. A *per se* rule would remove the need for any jurisdictional analysis in intellectual property infringement cases because alleged infringers would always be on notice as a result of

---

[82] *Cf. Younique,* 2016 WL 6998659, at *6.

[83] Opposition at 13, docket no. 16.

[84] 248 F.Supp.2d 1093 (D. Utah 2003)

[85] 2011 WL 4901321, at *3.

[86] *Sys. Designs*, 248 F.Supp.2d at 1098–99.

[87] *Id.* at 1099–1100; *Zing Bros.*, 2011 WL 4901321, at *3.

14

national patent and trademark databases. A review of patent and trademark infringement cases reveals that personal jurisdiction analysis is undertaken on a case-by-case basis. Indeed, the often-cited Supreme Court decision in *Burger King Corp. v. Rudzewicz* undertook personal jurisdiction analysis for trademark infringement claims.[88] Further, personal jurisdiction is routinely not found in intellectual property infringement cases, which directly contradicts NutraMarks' argument that a *per se* rule exists.[89]

Proper personal jurisdictional analysis weighs all the factors, including the defendant's actual contacts with the forum state and whether the defendant was on notice. In this case, review of all the facts offered to show Life Basics' contacts with Utah does not show sufficient minimum contacts with Utah to confer personal jurisdiction. Because of the lack of any direct contacts, the possibility that Life Basics' might have had notice of the potential for infringement on a mark held by a Utah company is insufficient to give this court specific jurisdiction. And adoption of a per se rule to the contrary is without precedent and would be improper.

## CONCLUSION AND ORDER

NutraMarks has not provided sufficient facts to establish that Life Basics' alleged trademark infringement was expressly aimed at Utah, knowing the brunt of the injury would be felt in Utah. Life Basics does not have minimum contacts with the State of Utah to support a finding of personal jurisdiction. Therefore,

IT IS HEREBY ORDERED that Life Basics' Motion to Dismiss[90] is GRANTED. NutraMarks' Complaint[91] against Life Basics is dismissed.

---

[88] 471 U.S. 462 (1985).

[89] *See, e.g., Xactware, Inc. v. Symbility Solution Inc.*, 402 F.Supp.2d 1359 (D. Utah 2005).

[90] Docket no. 7, filed Dec. 14, 2015.

[91] Complaint, docket no. 2, filed Aug. 10, 2015.

The Clerk is directed to close the case.

Dated May 17, 2017.

BY THE COURT:

_____
David Nuffer
United States District Judge